IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INFOTEK CORP.,
    *Plaintiff*,

    v.

DWAYNE PRESTON,
    *Defendant*

No. 18-cv-1386-ABA

**MEMORANDUM OPINION**

In 2018, Plaintiff InfoTeK Corporation, a former government contractor, filed this case against Defendant Dwayne Preston, InfoTeK's former chief financial officer.[1] InfoTeK alleges that Mr. Preston violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Maryland tort law, when he allegedly accessed InfoTeK's computer systems in July 2017 and altered certain human resources records, specifically related to employees' paid time off ("PTO"). ECF No. 1 ("Compl."). Mr. Preston has admitted to "changing this PTO." ECF No. 93-1 at 1.

This case has largely stalled over the past several years, during which InfoTeK's former chief executive officer, Jackie McComber, was indicted, convicted and sentenced for submitting false claims and making false statements to the government; her appeal is pending. Discovery in this civil case previously closed, but was reopened in September 2022 to permit Mr. Preston to further depose Ms. McComber and InfoTeK. Currently pending are (1) a motion by InfoTeK to preclude further deposition of Ms. McComber

---

[1] InfoTeK has been periodically referred to in this case, and a parallel criminal case, *United States v. McComber*, No. 21-cr-036-ELH, by different spellings or acronyms (Infotek, InfoTek, ITK, InfoTeK). It appears "InfoTeK" is the spelling the company used while it was in active operation, and so will be what the Court uses herein.

until "the conclusion of any and all appellate proceedings and the new criminal trial if one is awarded," ECF No. 118 at 13; (2) a competing request by Mr. Preston for an order that these supplemental depositions proceed and that Ms. McComber's objections pursuant to the Fifth Amendment privilege against self-incrimination be overruled; and (3) a motion by Mr. Preston to dismiss based on InfoTeK having "ceased operations" and, at least until recently, having forfeited its corporate status. ECF No. 123. For the following reasons, InfoTek's motion will be granted in part and denied in part; Mr. Preston's motion to dismiss will be denied.

## BACKGROUND

Judge Blake's September 2022 opinion reopening discovery lays out the procedural history of this case as of that time. ECF No. 95; *InfoTeK Corp. v. Preston*, 626 F. Supp. 3d 885, 888-91 (D. Md. 2022) ("*InfoTeK II*"). The Court need not rehash that recitation, which is hereby incorporated herein.

Earlier in the case, a motion by InfoTeK to stay its case against Mr. Preston during the pendency of the criminal case against Ms. McComber had been denied by Judge Gesner (to whom discovery and related scheduling matters in the civil case had been referred, *see* ECF No. 27). ECF No. 70 at 6; *InfoTeK Corp. v. Preston*, No. 18-cv-1386-CCB, 2021 WL 4521330, at *1 & *4 (D. Md. Oct. 4, 2021) ("*InfoTeK I*"). That was principally because InfoTeK "ha[d] engaged in dilatory tactics," such as not bringing "Ms. McComber's criminal proceeding to the court's attention or rais[ing] any argument pertaining to its concern about Ms. McComber invoking her Fifth Amendment privilege during deposition" despite having known about the existence of a criminal investigation—and then "waiting approximately six months after Ms. McComber's indictment to move for a stay." *InfoTeK I*, 2021 WL 4521330, at *3. Judge Gesner stated,

"time has long since passed for the defendant to depose Ms. McComber so as to discover information regarding plaintiff's allegations against him." *Id.*

As Judge Blake later explained, the deposition of Ms. McComber went forward on November 29, 2021, but she "invoked the Fifth Amendment in response to nearly every question." *InfoTeK II*, 626 F. Supp. 3d at 896. A Rule 30(b)(6) deposition of InfoTeK also took place, but as Judge Blake found, InfoTeK's designee "did not seem prepared to answer questions to the extent contemplated by Rule 30(b)(6)." *Id.* at 897. Those issues led Mr. Preston to file a motion to reopen discovery, which Judge Blake granted in September 2022. Although Ms. McComber was "fully entitled to avail herself of her constitutional right against self-incrimination," Defendant was entitled to another deposition of Ms. McComber "*upon the conclusion of her criminal matter*" because Ms. McComber's counsel had stated that Mr. Preston was "entitled to Ms. McComber['s] (and InfoTeK's) substantive deposition testimony prior to the civil trial" and Mr. Preston "relied on this promise." *Id.* at 896-98 (emphasis added); *see also* ECF No. 96 (Judge Blake ordering a status report "as to discovery . . . 30 days after the conclusion of the criminal trial"). Judge Blake denied Mr. Preston's request for reimbursement of fees and costs, however—at least "so long as the second deposition is narrowly tailored to the then-remaining issues in this case." *InfoTeK II*, 626 F. Supp. 3d at 898 n.22. As to the Rule 30(b)(6) deposition of InfoTeK, Judge Blake found that because InfoTeK had insufficiently prepared the designee (T.J. Crews) for the deposition, discovery had "not been a two-way street" and Defendant was entitled to "another deposition of a Rule 30(b)(6) designee." *Id.* at 897-98.

Ms. McComber's criminal trial took place in January-February 2023. The criminal charges stem from a contract between NSA and InfoTeK called Ironbridge. *See*

*McComber*, 2024 WL 1243851, at *2 (D. Md. March 22, 2024) (opinion denying motion for judgment of acquittal). Ms. McComber, in addition to serving as the CEO of InfoTeK, also served as InfoTeK's Senior Program Manager for the Ironbridge contract. *Id.* at *1. Under the contract, InfoTeK provided "highly technical software and application development services" to NSA. *Id.* There appears to have been no dispute that InfoTeK delivered the products and services that were required, and performed a "fine job" in doing so. *See id.* at *2. But the payments that NSA agreed to make, and did make, under the Ironbridge contract were not fees based on deliverables, but rather, at least in substantial part, were based on "the level of effort allegedly expended by each of its employees in each position, *i.e.*, the hours that the [InfoTeK] employees worked," including Ms. McComber. *Id.* at *13. Each monthly invoice that InfoTeK submitted to NSA contained "the hourly billing rate" for each InfoTeK employee who performed work that month—including Ms. McComber—as well as "the hours they had worked on the Contract in the particular month," the "amount" InfoTeK "was billing for their services," and "a certification" as to "the accuracy of the hours and charges presented." *Id.*

Counts 1 to 19 of the criminal indictment charged that Ms. McComber "caused [InfoTeK] to submit inflated timesheets and fraudulent invoices to NSA" from March 2016 to September 2017. *Id.* at *2. Count 20 charged Ms. McComber with having made false statements to NSA investigators during an interview in October 2017 when she denied having "falsely fill[ed] out [a] timesheet" and when she stated that timesheets were "accurate" when they invoiced NSA for "a full 8 hours on almost all of the days she had billed time to the IRONBRIDGE contract." *See id.* at *1-*2.

The government's case in chief in the criminal trial began on January 19, 2023, and lasted nine trial days (through February 3, 2023). The defense called six witnesses,

including Ms. McComber, as well as Mr. Preston. Ms. McComber's testimony began mid-afternoon on February 7, 2023, and continued through most of February 8. *United States v. McComber*, Case No. 21-cr-036-ELH, ECF No. 302 at 189-226 (Feb. 7, 2023 testimony) & ECF No. 303 at 3-208 (Feb. 8, 2023 testimony). The government re-called Mr. Preston in its rebuttal case, in response to testimony by Ms. McComber that Mr. Preston had "tampered with and altered her time records." *McComber*, 2024 WL 1243851, at *13 & n.24. Ms. McComber was convicted on all twenty counts in the indictment.

Following the criminal trial, in this (civil) case Mr. Preston sought to proceed with the reopened deposition of Ms. McComber. ECF No. 108 at 2-3. Judge Gesner ruled in May 2023 that the deposition could await at least the conclusion of Ms. McComber's sentencing. ECF No. 109. In the criminal case, Judge Hollander denied a motion for judgment of acquittal in March 2024, *United States v. McComber*, No. 21-cr-036-ELH, 2024 WL 1243851 (D. Md. Mar. 22, 2024), and, following a three-day sentencing hearing, in July 2024 sentenced Ms. McComber to 13 months' imprisonment. *United States v. McComber*, No. 21-cr-036-ELH, ECF No. 495. Ms. McComber filed a notice of appeal on July 12, 2024. In October 2024, Ms. McComber filed motions to stay incarceration pending appeal, which were denied. *United States v. McComber*, No. 21-cr-036-ELH, 2024 WL 4664630 (D. Md. Nov. 4, 2024); *United States v. McComber*, No. 21-cr-036-ELH, ECF Nos. 547, 548.

Meanwhile, in the civil case, in advance of Ms. McComber's reporting date to begin her sentence, InfoTeK filed a motion on August 28, 2024, seeking a protective order "relieving [Ms. McComber] of any obligation to appear or testify at the proposed deposition" until the conclusion of "any and all appellate proceedings and [a] new

criminal trial if one is awarded." ECF No. 118 at 6 & n.1.[2] InfoTeK anticipated that Mr. Preston would argue that Ms. McComber had waived any Fifth Amendment privilege against self-incrimination by having testified at her criminal trial, but argues that she had not waived any privilege because "a waiver in one proceeding does not constitute a waiver in subsequent proceedings." *Id.* at 9. InfoTeK further argues that it is entitled to a blanket protective order barring any further deposition of Ms. McComber from taking place at all—as opposed to precluding particular questions—until the conclusion of her appeal and any subsequent proceedings in the criminal case because "Ms. McComber will maintain her Fifth Amendment privilege to all of the questions Defendant previously asked her at her deposition." ECF No. 122 at 2.

Although ordinarily the invocation of the privilege against self-incrimination in a civil case entitles the opposing party to an adverse inference—and InfoTeK acknowledges that "an adverse inference "might be imposed on a party in a civil action upon a witness's assertion of her Fifth Amendment rights, *id.*—InfoTeK contends that the question of whether adverse inferences should be drawn, or as to which facts, is "not yet ripe" because "after the conclusion of [her] criminal appeal and the final resolution of her criminal matter, . . . she may have no further need or intent to continue to assert the privilege," and at that point "would be able to both submit to a pre-trial deposition and testify at the trial in this matter." ECF No. 118 at 12 (emphases omitted). InfoTeK's proposal as to the schedule in this civil case (which, as noted, was filed in 2018) is to set a trial date "for early 2026 in hopes that the Fifth Amendment concerns may have been mitigated or resolved by then." *Id.* at 13.

---

[2] This case was reassigned to the undersigned on October 30, 2024.

Mr. Preston, for his part, agrees with InfoTeK that whether adverse inferences against InfoTeK may be appropriate is "not ripe." ECF No. 119 at 5. He contends that although an adverse inference can be drawn "against a corporation based on the invocation of the Fifth Amendment by an executive of the corporation who acted in that capacity during the relevant time period in question," *id.* at 8, he prefers an order compelling Ms. McComber to answer the questions that she previously refused to answer under the Fifth Amendment. *Id.* at 15. He argues he is entitled to such an order because Ms. McComber "waived her Fifth Amendment protections in the Criminal Case" by "testif[ying] on her own behalf." *Id.* He further argues that InfoTeK's motion for a protective order is procedurally improper because the applicability of the privilege, or the scope of a waiver, would need to be made on a question-by-question basis. *Id.* at 4. Mr. Preston proposes that Ms. McComber be compelled to sit for deposition and answer all questions that she previously refused to answer, and that, particularly in light of her alleged waiver of her Fifth Amendment privilege, there is no basis to further delay such deposition during the pendency of her criminal appeal. *Id.* at 14-15.

The other pending motion, as noted, is Mr. Preston's motion to dismiss, filed September 26, 2024. ECF No. 123. It appears to be undisputed that, as of the date of that motion, InfoTeK was not in good corporate standing with the Maryland Department of Assessments and Taxation (also known as the State Department of Assessments and Taxation, or SDAT), and indeed had forfeited its corporate status as of October 2, 2023. ECF No. 123-1. On the basis of such forfeiture, Mr. Preston moved to dismiss the case. ECF No. 123. Following that motion, however, InfoTeK filed all "outstanding reports" and paid all "outstanding tax fees," and requested a waiver of other fees and penalties. ECF No. 124 at 2. On November 21, 2024, SDAT issued

7

InfoTeK a new Certificate of Good Standing, and SDAT records reflect that InfoTeK is now "in good standing." ECF No. 126-1 & 126-2.

## DISCUSSION

### I.     Motion to Dismiss

As an initial matter, Mr. Preston's motion to dismiss based on InfoTeK's earlier (and apparently temporary) forfeiture of its corporate charter, and lack of good standing, will be denied, because those deficiencies have been cured, as explained above. Indeed, Mr. Preston has not filed a reply brief, and thus has not made any argument for why the motion is not moot given that InfoTeK is now in good standing.

### II.    Motion for Protective Order

InfoTeK's motion for a protective order and its corresponding request to stay the case until at least spring 2026, and Mr. Preston's competing request that the Court compel Ms. McComber to testify at deposition and overrule her Fifth Amendment objections, present four questions: (1) Having been convicted and sentenced, but with her appeal pending, can Ms. McComber assert a Fifth Amendment privilege against self-incrimination at all? (2) Did Ms. McComber waive her Fifth Amendment privilege against self-incrimination by testifying in her criminal trial, such that she may no longer rely on that privilege in this case? (3) Regardless of waiver, should the deposition that Judge Blake ordered back in September 2022 take place in the coming months, or instead be postponed until after the full conclusion of Ms. McComber's criminal case, including appeals and any subsequent proceedings? (4) If a deposition proceeds now and Ms. McComber stands on her earlier refusals to answer, is Mr. Preston entitled to

adverse inferences, and if so, what should the procedure be for determining what adverse inferences should be drawn?[3]

### A.    Ms. McComber Retains a Fifth Amendment Privilege

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. And although the Fifth Amendment refers expressly to criminal cases, it is well settled that an individual is entitled to invoke the privilege against self-incrimination during a civil proceeding. *See, e.g.*, *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (explaining that the Fifth Amendment permits an individual "not to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answer might incriminate him"). Under this "essential mainstay" of our "accusatorial, not inquisitorial," system of prosecution, the government is "constitutionally compelled to establish guilt by evidence independently and freely secured, and [it] may not by coercion prove a charge against an accused out of his [or her] own mouth." *Malloy v. Hogan*, 378 U.S. 1, 7-8 (1964). The

---

[3] There appears to be no dispute that, if a supplemental 30(b)(6) deposition of InfoTeK is to be taken, Ms. McComber should be the designee. *See* ECF No. 119 at 4 n.3 (Defendant's position: "Defendant has no power or ability to compel Plaintiff to present a certain individual to be Plaintiff's Rule 30(b)(6) representative, however this Court has implied and the lack of substantive discovery that has been had thus far can lead to the conclusion that Ms. McComber is the only person who can adequately answer questions on behalf of Plaintiff."); ECF No. 118 at 8 (InfoTeK taking the position that not only the deposition of Ms. McComber's deposition in her personal capacity, but also any 30(b)(6) deposition, should "be scheduled after the conclusion of Ms. McComber's criminal appeal and the final resolution of her criminal matter"). In any event, with Mr. Preston not having requested an order compelling that InfoTeK designate a corporate witness other than Ms. McComber, the Court deems Mr. Preston to have forfeited the right to demand such a designation. Accordingly, the sole deposition that remains to be taken in this case, if at all, is a deposition of Ms. McComber (in both personal and corporate designee capacities).

privilege against self-incrimination "protects a mere witness as fully as it does one who

is also a party defendant." *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924). The privilege

"must be accorded liberal construction in favor of the right it was intended to secure."

*Hoffman v. United States*, 341 U.S. 479, 486 (1951). It is to be "broadly applied and

generously implemented in accordance with the teaching of the history of the privilege

and its great office in mankind's battle for freedom." *In re Gault*, 387 U.S. 1, 50 (1967).

   A threshold question here is whether, now that Ms. McComber has been

sentenced, she has any continued right to assert a Fifth Amendment privilege (assuming

it has not been waived, which is discussed below). *See* ECF No. 119 at 15 (Mr. Preston

arguing that because "Ms. McComber has already been criminally charged, prosecuted

and sentenced," any "apprehended danger" from testifying in the civil case "has already

passed"). She does retain that right. The "conviction and sentencing of a criminal

defendant" does not "result[] in the loss of the privilege against self-incrimination,"

where appeals or other further proceedings in the case continue. *Taylor v. Best*, 746

F.2d 220, 222 (4th Cir. 1984). In *Taylor*, for example, a criminal case against Taylor,

who was the plaintiff in the § 1983 civil case, was on appeal at the time he invoked the

privilege against self-incrimination. *Id.* "If Taylor's conviction were overturned on

appeal, post-conviction evidence, if probative and otherwise admissible, might be used

against him." *Id.* Only "where there can be no further incrimination"—such as where

"the sentence has been fixed and the judgment of conviction has become final"—is there

"no basis for the assertion of the privilege." *Mitchell v. United States*, 526 U.S. 314, 326

(1999). Here, Ms. McComber has appealed her conviction and sentence, and in the event

she were to prevail on appeal, one possible scenario is that she would face a new trial.[4]

Thus, insofar as she has not waived the privilege, she retains the right to assert it.

### B.    Any Waiver At The Criminal Trial Does Not Extend To This Case

As noted above, Ms. McComber testified at her criminal trial; her testimony

spanned approximately a full day. Mr. Preston argues that even if Ms. McComber had a

Fifth Amendment privilege against self-incrimination in advance of her criminal trial,

she waived that privilege when she elected to testify, and that such waiver extends to

this case.[5] Mr. Preston argues that all of the Fifth Amendment objections and

instructions not to answer asserted by Ms. McComber and her counsel at her December

17, 2021 deposition are no longer valid (if they ever were), and thus this Court should

compel Ms. McComber to sit for a deposition and rule that she may no longer assert the

Fifth Amendment privilege as she did in the earlier deposition.

Some privilege waivers are proceeding-agnostic. For example, once a witness has

waived the attorney-client privilege on a given subject, the waiver "in one proceeding

will be a waiver in all subsequent proceedings"; "[o]ne cannot pick and choose one

---

[4] In denying a motion for a stay pending appeal in the criminal case, Judge Hollander ruled, among other things, that Ms. McComber had not shown "a likelihood of succeeding on appeal." *United States v. McComber*, No. 21-cr-036-ELH, 2024 WL 4664630, at *6 (D. Md. Nov. 4, 2024). But that does not determine the issue in this case, because as noted above, the privilege against self-incrimination remains extant until "the sentence has been fixed and the judgment of conviction has become final." *Mitchell*, 526 U.S. at 326.

[5] As the Sixth Circuit has recently explained, the term "waiver" in this context is a misnomer, as "[g]enerally, a waiver is an intentional relinquishment of a known right." *In re Flint Water Cases*, 53 F.4th 176, 193 n.16 (6th Cir. 2022). "It would be more precise" to label the issue there, and here, as one invoking the "doctrine of forfeiture." *Id*. Nonetheless, as in the *Flint Water* case, the Court here will "use the term 'waiver' because of its widespread use in the Fifth Amendment context." *Id*.

proceeding in which to waive the [attorney-client] privilege and then hope to recapture it in another." Edna Selan Epstein, 1 *The Attorney-Client Privilege and the Work Product Doctrine* 775 (2017). The Fifth Amendment privilege against self-incrimination is different. Within the context of a single trial, for example, a witness cannot "take the stand to testify in [his or] her own behalf and also claim the right to be free from cross-examination on matters raised by [the witness's] own testimony on direct examination." *United States v. Brown*, 356 U.S. 148, 156 (1958). A contrary rule "would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Id.; see also Mitchell*, 526 U.S. at 321 ("[A] witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.").

But the Fourth Circuit has held that such waiver "may not apply to subsequent proceedings at which [the person] may choose not to testify." *Taylor*, 746 F.2d at 222; *see also United States v. Cox*, 836 F. Supp. 1189, 1200 (D. Md. 1993) (Legg, J.) ("[A] defendant's testimony in one proceeding is not necessarily a waiver of his Fifth Amendment right not to testify in a subsequent proceeding.") (citing *United States v. Fortin*, 685 F.2d 1297, 1298 (11th Cir. 1982)). This is consistent with the teaching of McCormick on Evidence: "A witness's loss of the privilege [against self-incrimination] by testifying applies throughout but not beyond the 'proceeding' in which the witness gave the incriminating testimony." 1 *McCormick on Evid.* § 133 (8th ed.). "Applying this approach, the courts agree that testimony in one trial does not bar a witness from

refusing to testify about those same matters in another trial." *Id.*[6] These authorities

follow an oft-cited articulation of the rule by the Third Circuit: "It is settled by the

overwhelming weight of authority that a person who has waived his privilege of silence

in one trial or proceeding is not estopped to assert it as to the same matter in a

subsequent trial or proceeding." *In re Neff*, 206 F.2d 149, 152 (3d Cir. 1953) (citing

cases).

The Sixth Circuit has articulated the two "reasons for this proceeding-specific

rule." *In re Flint Water Cases*, 53 F.4th at 194. "First, 'conditions might have changed' in

the time between the proceedings, 'creating new grounds for apprehension, *e.g.*, the

passage of new criminal law.'" *Id.* (quoting *In re Morganroth*, 718 F.2d 161, 165 (6th Cir.

1983)). "Second, the 'repetition of testimony in an independent proceeding might itself

be incriminating, even if it merely repeated or acknowledged the witness'[s] earlier

testimony, because it could constitute an independent source of evidence against him or

her.'" *Id.* (quoting *Morganroth*, 718 F.2d at 165); *see also* 1 *McCormick on Evid.* § 133

(8th ed.) (describing the "practice" of limiting Fifth Amendment waivers to specific

proceedings as "apparently based on the notion that the shift from one proceeding to

another sufficiently increases the risk of further incrimination that the witness should

be entitled to decide anew whether to disclose the incriminating information").

To be sure, the rule permitting a witness to invoke the Fifth Amendment privilege

in one proceeding after having testified in a prior proceeding is not universal. The D.C.

---

[6] The Sixth Circuit has recently observed that a "majority of jurisdictions" even have
concluded that a waiver at one "hearing" within a single case "does not carry over to
trial" in the same case, though that issue is not presented here. *In re Flint Water Cases*,
53 F.4th 176, 200 (6th Cir. 2022); *see also id.* at 205 (holding that "a deposition and
trial are separate proceedings for Fifth Amendment purposes").

Circuit, for example, has described "the better rule" as providing that "the waiver carries through unless there is new material, or possibly new conditions, that may give rise to further incrimination." *Ellis v. United States*, 416 F.2d 791, 805 (D.C. Cir. 1969); *but see, e.g., United States v. Perkins*, 138 F.3d 421, 425 (D.C. Cir. 1998) (holding that the witness in that case, despite having testified at an earlier trial, did not waive his Fifth Amendment rights because he remained in danger of further incrimination, specifically the risk of being prosecuted for perjury based on his prior testimony). And one could reasonably conclude that the Fourth Circuit's instruction in *Taylor* is not binding precedent because it is *dicta*—leaving the question undecided in this circuit. *See Taylor*, 746 F.2d at 222-223 (after reasoning that "waiver may not apply to subsequent proceedings at which Taylor may choose not to testify," holding that "nevertheless . . . in this case the fifth amendment right against self-incrimination did not arise"). But in light of the Sixth Circuit's recent survey after which it concluded that the "majority of jurisdictions" not only follow the "single proceeding" rule but further hold that "a waiver at one hearing does not carry over to trial because the two are not part of the same proceeding," *Flint Water Cases*, 53 F.4th at 200, and the instruction from *McCormick on Evidence* that "testimony in one trial does not bar a witness from refusing to testify about those same matters in another trial," 1 *McCormick on Evid*. § 133 (8th ed.), this Court follows the Fourth Circuit's instruction in *Taylor* that a Fifth Amendment waiver in one proceeding "may not apply to subsequent proceedings at which [the party or witness] may choose not to testify." 746 F.2d at 222.

Now, those cases all present the typical sequence: a witness testifies first in a civil (or other non-criminal) proceeding, and then the question becomes whether the witness may be compelled to testify in a subsequent criminal proceeding. This case is different:

14

Ms. McComber testified at her criminal trial, but now seeks to avoid testifying in this civil case brought by her company, InfoTeK, or at least until such time as her criminal case has fully and finally concluded. Nonetheless, the same rationale applies here. Ms. McComber's criminal trial is clearly not the same "proceeding" as this civil case, and so the fact that Ms. McComber waived her Fifth Amendment rights at her criminal trial does not render the privilege waived in the context of this case. After all, "[t]he privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486. And the privilege attaches so long as Ms. McComber has "reasonable cause to apprehend danger" from testifying. *Id*. Here, in light of the pendency of the appeal, in which Ms. McComber seeks reversal or a new trial, she has made the requisite showing to permit continued invocation of the privilege.

For these reasons, although Ms. McComber has already provided wide-ranging testimony in her criminal case, she has not effected a waiver or forfeiture of her privilege against self-incrimination that would justify or permit an order compelling her to testify at deposition and answer the questions as to which she invoked the privilege at her 2021 deposition.[7]

---

[7] This is not to suggest that Ms. McComber's testimony in her criminal trial would necessarily be inadmissible in this case. Those statements may constitute party admissions of InfoTeK that Mr. Preston could use in this case, regardless of whether Ms. McComber sits for another deposition—though this is an issue the Court need not and does not decide at this time. *See* Fed. R. Evid. 801(d)(2)(D) (providing that a statement "offered against an opposing party" and made by the opposing party's "agent or employee on a matter within the scope of that relationship and while it existed" is excluded from the definition of hearsay); *see also United States v. Bumpass*, 60 F.3d

**C.    InfoTeK Has Not Justified A Stay**

As discussed above, discovery in this case was originally scheduled to close in April 2019. ECF No. 13. That deadline has been postponed many times, including eight extensions even before Ms. McComber was indicted, *see* ECF Nos. 15, 20, 23, 32, 43, 46, 49, several after the indictment, *see, e.g.*, ECF Nos. 54, 64, 67, 74, and another when her sentencing was scheduled, *see* ECF No. 109 (May 30, 2023 order that the deposition of Ms. McComber take place after her sentencing). In October 2021, Judge Gesner denied InfoTeK's motion to stay proceedings "until the parallel federal criminal matter is resolved." *See* ECF No. 68-2 at 12 (InfoTeK's memorandum in support of motion to stay); ECF No. 70 (memorandum opinion denying stay). In November 2021, Judge Blake ordered that a deposition of Ms. McComber could await "the conclusion of her criminal matter," ECF No. 95 at 18, and required that a "status report as to discovery" be filed "30 days after the conclusion of the criminal trial," ECF No. 96. The question now is whether the civil case should continue to be held in abeyance with the trial having ended, Ms. McComber having been sentenced, and the criminal case pending on appeal.

InfoTeK argues that Ms. McComber should be permitted to retain her Fifth Amendment privilege given the pendency of her appeal in the criminal case, but also that InfoTeK should have the benefit of Ms. McComber testifying freely in the civil case; InfoTeK's proposed reconciliation of those competing priorities is that "a trial date be set for early 2026 in hopes that the Fifth Amendment concerns may have been mitigated or resolved by then." ECF No. 118 at 13. But InfoTeK does not even attempt to invoke the

---

1099, 1102 (4th Cir. 1995) (explaining that a witness who invokes the Fifth Amendment is considered "unavailable" for purposes of Federal Rule of Evidence 804); *United States v. Miller*, 904 F.2d 65, 67-68 (D.C. Cir. 1990) (same).

standards for a motion to stay, let alone explain why the relevant factors justify a stay. *Cf.* ECF No. 70 at 4-5 (identifying the relevant factors). And ordering that a trial in this case not take place until 2026 would, of course, effectively constitute a stay pending the final disposition of the criminal case.

And although neither side (albeit for different reasons) requests that the Court decide at this time whether adverse inferences arising from Ms. McComber's invocation of the privilege should be drawn, *see* ECF No. 118 at 12-13; ECF No. 119 at 5, the fact that adverse inferences can arise in civil cases from Fifth Amendment privilege invocations further reveals why InfoTeK's renewed motion for a stay is not justified. "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them," *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), "at least where refusal to waive the privilege does not lead 'automatically and without more to [the] imposition of sanctions.'" *Mitchell*, 526 U.S. at 328 (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 808, n.5 (1977)). To be sure, the continued pendency of the criminal case is relevant to whether InfoTeK is entitled to a stay. *See, e.g.*, *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) ("When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated."). But a defendant in a criminal case who is also a party (or witness) in a civil case "has no absolute right not to be forced to choose between testifying in a civil matter and asserting his [or her] Fifth Amendment privilege." *Id.* (quoting *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995)). Indeed, if a party against whom an adverse inference could be drawn based on a Fifth Amendment privilege invocation could automatically avoid application of any such inference by simply

17

suspending a civil case until all risk of future danger of adverse consequences in a criminal case ended, civil cases parallel to criminal cases would almost by definition have to be stayed, and adverse inferences would never be drawn.

For these reasons, InfoTeK's renewed request for such a stay is denied.

### D.    Procedure Going Forward

That leaves the questions of (1) whether (and when) a deposition of Ms. McComber should take place, (2) when discovery should finally close, and (3) when motions for summary judgment and/or adverse inferences should be filed. In the somewhat unusual posture of this case, the Court will leave it to Mr. Preston to decide whether he wishes to proceed with this case at this time (while Ms. McComber's privilege against self-incrimination remains extant), or to consent to InfoTeK's request to effectively stay this case pending the full and final conclusion of the criminal case. In the event Mr. Preston elects to proceed with a deposition notwithstanding the continued availability of the Fifth Amendment privilege, the Court understands that, in light of Ms. McComber's incarceration, scheduling a deposition might pose some logistical difficulties (although a virtual deposition may be appropriate in these circumstances and would likely be easier to accomplish than an in-person deposition). The Court further understands that, in light of the rulings herein, Mr. Preston may conclude that another deposition may not be productive or necessary. The order that accompanies this memorandum opinion will lay out the schedule for setting discovery and motions deadlines. A trial date will be set following rulings on dispositive motions.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 123) is denied, and Plaintiff's motion for a protective order (ECF No. 118) is granted in part

(insofar as the privilege has not been waived as to this case) and denied in part (insofar as InfoTeK's request for a stay is denied). A separate order follows.

Date: December 20, 2024                                _____/s/_____
                                                       Adam B. Abelson
                                                       United States District Judge